## A. HATCHETT *v.* STEAMER COMPROMISE AND OWNERS.

The clause in a steamboat's bill of lading reserving the privilege of reshipment, implies an obligation on the part of the boat to reship, if the stage of water in the river does not permit her to prosecute her voyage to her point of destinaion, and the reshipment is possible ; and the additional expense of thus forwarding the goods by another boat, is charged to the boat with which the original contract of affreightment was made, the consignors being bound to pay only the freight specified in the bill of lading.

Low water is not to be classed among the dangers of the river, excepted in the bill of lading, and which absolve the carrier from his obligation to deliver the goods without unnecessary delay and in good order and condition.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Elmore & King*, for plaintiff. *J. Vanmeter*, for defendant and appellant.

BUCHANAN, J. The plaintiff claims of defendants under a contract of affreightment, by which the latter bound themselves to carry merchandise from New Orleans to Shreveport, for one dollar and fifty cents a barrel, *with the privilege of reshipping*. The Red River being at a low stage of water, the Compromise could not get further up than Alexandria, and availing herself of the clause of the bill of lading, transferred the freight to a boat of less draft, the White Cliffs, to be taken from Alexandria to Shreveport. But the White Cliffs put the freight ashore upon the banks of the river at points short of the port of destination ; and the plaintiff was only able finally to obtain his goods, by making a contract directly with the White Cliffs, for a very greatly advanced rate of freight. He brings this suit to be reimbursed the difference between what he contracted to pay the defendants, and what it actually cost him, to get his goods to Shreveport.

HATCHETT
v.
SBT. COMPROMISE.

We are of opinion, that the clause in the bill of lading in this record, "with privilege of reshipment," implied an obligation to reship, if the stage of water in the Red River did not permit the Compromise to prosecute her voyage to Shreveport, and if reshipment was possible in any steamboat that could make the voyage; and that the additional expense of forwarding the freight by another boat, is chargeable to the Compromise. The obligation of this common carrier under his bill of lading, was to deliver the goods at Shreveport, without unnecessary delay, in good order and condition, unto the consignees, or assigns, they paying the specified freight and no more (the dangers of the river and fire only excepted). Low water is not to be classed among the dangers of the river, which absolve the carrier from this conventional obligation.

The judgment of the District Court is, therefore, affirmed with costs.